IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT HUNTINGTON

**TIMOTHY R. JONES and**
**JANIE COLE**
178 Elm Street
Winfield, WV 252134

      **Plaintiffs,**

v.                                                                 CIVIL ACTION NO.: 3:19-cv-00618

                                                                                               JUDGE: _____

**THE BOARD OF EDUCATION OF**
**PUTNAM COUNTY, WEST VIRGINIA,**
**JOHN HUDSON,**
**SHARLA GRIFFITH,**
**CANDI HATFIELD,**
**ALICIA COEY, a/k/a ALICIA POWELL and**
**EDDIE STARCHER,**

      **Defendants.**

## COMPLAINT

1. At all times relevant to this civil action Timothy R. Jones and Janie Cole were citizens and residents of the State of West Virginia, residing at 178 Elm Street, Winfield, Putnam County, West Virginia.

2. Timothy R. Jones and Janie Cole are man and wife and the custodial parents of Z.S.J., an infant child.

3. At all times relevant to this civil action Z.S. J. was a student at Winfield Elementary School, located at 2 Wall Street within the city of Winfield, Putnam County, West Virginia 25213.

4.      At Winfield Elementary School Z.S.J. was a student with Downs Syndrome and a moderate to severe intellectual disability requiring speech language therapy and occupational therapy.

5.      As a result of his Downs Syndrome and moderate to severe intellectual disability, Z.S.J is limited in his ability to ambulate, dress himself, see to his basic personal needs, communicate effectively, relate acceptably with others or carry out most major activities of daily living; consequently, Z.S.J is physically and intellectually disabled, as defined by all applicable laws of the United States and West Virginia, including Section 504 of the Rehabilitation Act of 1973, currently codified at 29 U.S.C §794, the Americans With Disabilities Act of 1991, 42 U.S.C. §§ 12101 *et seq*. and the West Virginia Human Rights Act, W. Va. Code §5-11-1, *et seq*.

6.      The Board of the Education of Putnam County [the Board] is a local educational agency (as defined by 20 U.S.C. §7801), that operates the system of free public schools in Putnam County, West Virginia, from its central office located at 77 Courthouse Dr., Winfield, WV, 2521

7.      At all times relevant to this civil action John Hudson [Hudson] was employed in the central office of the Board as the Superintendent of Schools.

8.      At all times relevant to this civil action Sharla Griffith [Griffith] was employed in the central office of the Board as Director of Exceptional Education.

9.      At all times relevant to this civil action Candi Hatfield [Hatfield] was employed by the Board as the principal of Winfield Elementary School.

10.     At all times relevant to this civil action Alicia Coey, a/k/a Alicia Powell, [Coey] was an employee of the City of Winfield, purportedly acting as a Prevention Resource Officer, without specific written contractual duties and responsibilities, on the premises of Winfield Elementary School.

11. At all times relevant to this civil action Eddie Starcher [Starcher]was an employee of the City of Winfield exercising some degree of authority and control over the conduct of Coey.

12. This is a civil rights action by Timothy Jones and Janie Cole for unlawful retaliatory acts against them as the parents of Z.S.J. meant to punish, intimidate, threaten, coerce and discriminate against them in retribution for their advocacy on behalf of Z.S.J.

13. Timothy Jones and Janie Cole each seek damages and costs pursuant to the Americans With Disabilities Act of 1991 (42 U.S.C. §§ 12101 *et seq*.) (hereinafter referred to as "ADA"), Section 504 of the Rehabilitation Act of 1973, currently codified at 29 U.S.C §794, the Civil Rights Act of 1964 and the West Virginia Human Rights Act, W. Va. Code §§5-11-1, *et seq*

14. This Court has original jurisdiction to hear and decide this case under 28 U.S.C. §§ 1331 and 1343.

15. Supplemental jurisdiction for this Court to hear and decide claims brought under parallel West Virginia law arising from the same nucleus of operative facts is predicated on 28 U.S.C. § 1367.

16. The claims of Timothy Jones and Janie Cole are authorized by 28 U.S.C. §§ 2201 and 2202.

17. All actions complained of herein took place within the jurisdiction of the United States District Court, Southern District of West Virginia, and venue is invoked pursuant to 28 U.S.C. § 1391(b), (c).

18. During the school year 2017/2018 and, upon information, during the school year 2018/2019 [the relevant time period], no student attending Winfield elementary school was required to ride the school bus in order to attend school; there was no restriction upon any student being driven to Winfield Elementary School by a parent or other person.

19.     During the relevant time period, Winfield Elementary School established a written policy permitting parents who did not wish to have their children ride the school bus to drive their children to school and park parallel to the school in a parking area on the private property of the Board of Education which ran parallel with and abutting a public street in the City of Winfield known as Wall Street; both the parking area lying adjacent to and abutting upon Wall Street and Wall Street itself are situated within a "residence district" as defined by W. Va. Code §17C-1-45.

20.     During the relevant time period, the Winfield Elementary School written "streamlined" drop off policy required all personal vehicles bringing children to school to pull as near as possible to signs on display near the center doors of the school where "drop-off valet staff" would then direct 6 to 10 cars at a time to unload students; after unloading, these vehicles were to pull away and 6 to 10 other vehicles in the line would take their place, unload and leave, and so on and so on until all traffic was unloaded.

21.     During the relevant time period, Timothy Jones and Janie Cole chose to drive Z.S.J to Winfield Elementary School so he could be treated just like the other non-disabled students, instead of putting Z.S.J., unaccompanied, on what the Board designated as the "special needs bus" restricted to transporting children such as Z.S.J. in an isolated environment.

22.     During the relevant time period, the Board, acting through Hatfield as principal asked Timothy Jones and Janie Cole to abide by an unwritten modification of this "streamlined" drop off procedure that required them to sit in the line of drop off traffic until all the vehicles in their group of 6 to 10 vehicles had unloaded all non-disabled students, wait for all traffic in front of them to move on and then pull to a separate area farther from the doors of the school where Z.S.J. could be unloaded from the vehicle and taken to school.

23. Timothy Jones specifically voiced his objection to this unwritten policy that applied only to Z.S.J. and advised Hatfield and other agents of the Board that Z.S.J. often became agitated verbally and physically because of the delay caused by the volume of traffic in front of the school; Hatfield labeled Mr. Jones expressions of concern regarding the undue delay for his disabled son as "belligerent, difficult and defiant."

24. On a number of occasions, Timothy Jones abided by the Winfield Elementary School written policy and allowed Z.S.J. to exit his vehicle in the line of traffic where other nondisabled students were getting out of their cars and going to school, often resulting in some unfortunate delay to other parents of nondisabled students because of the time Z.S.J. takes to get out of a car.

25. During the relevant time period, Timothy Jones and Janie Cole constantly advocated on behalf of Z.S.J. for either strict enforcement of the Winfield Elementary School unloading policy or an accommodation in the form of a designated drop-off area for Z.S.J. located on the same side of Wall Street as Winfield Elementary School, thereby meeting Z.S.J.'s individual needs as adequately as Winfield Elementary School was meeting the needs of nonhandicapped students.

26. Upon information and belief, the constant advocacy of Timothy Jones and Janie Cole on behalf of Z. S. J. caused Hudson, Hatfield, Coey and Starcher to conclude that Timothy Jones had "issues" and that he was a "difficult" man and to label both Timothy Jones and Janie Cole as "non-stable parents" and "crazies."

27. On the morning of August 27, 2018, Timothy Jones drove Z.S.J. to a point on or adjacent to Wall Street in front of the center doors of Winfield Elementary School within the zone identified in the written "streamlined" drop off policy, exited the driver side of his vehicle, went

to the rear of his vehicle, opened the rear passenger door and leaned into his vehicle to assist Z.S.J. out of the car so that he could go in the center doors of the school.

28. As Timothy Jones assisted Z.S.J. in exiting the vehicle, Coey, acting as an agent of the Board and on its behalf, approached Mr. Jones from the rear without identifying herself and demanded that he put his son back in the car and drive on to the secondary unloading zone defined by the unwritten policy that the Board chose to enforce relative to Z.S.J..

29. In a loud, frustrated but nonviolent and nonthreatening tone of voice, Mr. Jones told Coey that he did not need a lecture and that all he needed was help getting his disabled son out of the car and a consistent drop off policy that would not cause his son undue delay in going to school.

30. At the conclusion of this brief, disagreeable but nonconfrontational conversation, Coey took Z.S.J. by the hand and led him into school while Timothy Jones peacefully got back in his car and left for his day's work.

31. Following the confrontation of August 27, Timothy Jones became concerned regarding drop off policy for the upcoming school year and decided to take Z.S.J. to school on August 28 by parking near the school's office, having his son's teacher come to the office to take him back to his classroom area and then seeking someone with whom he could discuss the ongoing issues regarding student drop-off.

32. After Timothy Jones delivered Z.S.J. to his teacher, Coey approached Mr. Jones in the office area of Winfield elementary school and demanded that Mr. Jones produce a drivers' license, even though Mr. Jones identity was clearly known to everyone in the room and to Coey.

33. When Mr. Jones questioned why Coey needed to see his driver's license he was advised that he was being detained in the office area of the school and could not leave until other police personnel appeared.

34. Coey then positioned herself between Timothy Jones and the exit door and held Mr. Jones there unlawfully and against his will for a period of approximately five minutes while Mr. Jones stood peacefully in the office and observed Coey talking on the telephone to some unknown individuals, now believed to be agents of the Board.

35. After having been unlawfully detained in the office of Winfield Elementary School, Mr. Jones made contact with Griffith and asked for a meeting so that he could discuss drop-off arrangements for his son and continue to advocate for his son's rights as a disabled person to be accommodated at the school drop-off area.

36. After inviting Timothy Jones to come to the central office on the morning of August 28, 2018, Griffith, Hudson and Starcher conspired together to assure that Mr. Jones was held in the waiting room of the Board's central office until Starcher, armed and in uniform, could be escorted into the meeting room without Mr. Jones knowledge.

37. Timothy Jones was then escorted by board personnel into a meeting room where he was confronted by Griffith and Starcher.

38. Confronted with armed authority, Mr. Jones felt threatened, intimidated and coerced as he was compelled to participate in a meeting discussing his sons transportation and disability in the presence of Starcher.

39. During the course of the August 28, 2018 meeting Griffith repeatedly told Mr. Jones not to drive his son to school, that his son should ride the "special needs bus," and that the concerns

of Mr. Jones and his wife about Z.S.J.'s ability to adjust to riding the special needs bus were unfounded.

40. As Timothy Jones continued to advocate for an accommodation for his son to be driven to school, Starcher intervened in a threatening, coercive and intimidating tone of voice to tell Mr. Jones that he was confronted with choices and that there was no need to cater to his concerns about his son, that warrants or criminal complaints were going to be obtained for Mr. Jones and that: "This is not needing [sic] to happen at this school or any school here in Putnam County, okay?"

41. Starcher, with the acquiescence and apparent authority of Hudson and Griffith, continued to threaten, coerce and intimidate Timothy Jones by telling him: "You need to take a little advice from me. You need to take that help and run with it. Don't be the person who's always a troublemaker. … The only person that's got problem is you because you're being obstinate, okay? You've got to be nice. You got to be – yes, and do what their rules are."

42. Starcher, again with the acquiescence and apparent authority of Hudson and Griffith, proceeded to tell Mr. Jones in a threatening, coercive and intimidating voice: "If an officer comes up to you and says something, they expect you to do something, you're expected to do it. You don't argue with them. You don't get in their face. You're lucky – you're very lucky that she [Coey] is pregnant and she's off on light duty or she would've arrested you today."

43. On August 28, 2018, Coey with the participation, agreement and approval of Hudson, Griffith, Hatfield and Starcher, presented herself at the Magistrate Court of Putnam County and obtained two criminal complaints against Timothy Jones by submitting materially false statements, accusing Mr. Jones of stopping, parking or leaving his vehicle upon a highway outside a business or residence district, forcibly or illegally hindering or obstructing a law

enforcement officer in her official capacity and failure to have a drivers' license in his possession at all times while operating a motor vehicle.

44. At the time Coey made these materially false statements to the Putnam County Magistrate Court, she had actual knowledge that the statements were false; that same knowledge was later conveyed to Starcher, Hudson and Hatfield.

45. When Coey advised Hatfield that she had obtained criminal complaints against Timothy Jones she inquired of Hatfield whether: "That guys [sic] can't be pleased. We are getting warrants on him today. I wasn't too harsh was I on him?"; the response from Hatfield was: "No you were not too harsh at all. He's a difficult man."

46. In the late morning or early afternoon hours of August 28, 2018, Janie Cole became concerned about her husband because she knew he was attempting to meet with Hatfield, Hudson or Griffith regarding her son's need for an accommodation in drop-off policy at Winfield Elementary School

47. When Janie Cole inquired at Winfield Elementary School regarding her husband, she was given a number that she did not recognize to call for information.

48. When Janie Cole called the number that had been provided her by board personnel she was connected to Starcher who told her in a threatening, coercive and intimidating voice that regarding her husband: "We are getting warrants for him right now and we are going to pick him up and throw his ass in jail this afternoon."

49. On or about September 12, 2018 Timothy Jones was compelled to hire counsel to defend him in Putnam County magistrate criminal cases 18-M-05161,2; Mr. Jones was caused to appear in the Magistrate Court of Putnam County for arraignment on September 12, 2018; Mr. Jones was caused to appear at a pretrial hearing on November 1, 2018; on January 4, 2019 all

charges against Timothy Jones were dismissed on his motion without objection by the Putnam County Prosecuting Attorney.

50. All of the threats, course of conduct, intimidating acts and initiation of malicious criminal prosecution directed towards Timothy Jones were in retaliation and reprisal against Timothy Jones and Janie Cole for their activities in advocating vigorously on behalf of their disabled son to secure for him rights guaranteed by federal and state law including the Americans With Disabilities Act of 1991 (42 U.S.C. §§ 12101 *et seq*.) (hereinafter referred to as "ADA") 42 U.S.C §12203, Section 504 of the Rehabilitation Act of 1973, currently codified at 29 U.S.C §794, 29 CFR § 33.13, the Civil Rights Act of 1964 and the West Virginia Human Rights Act, W. Va. Code §5-11-9(C).

51. All of the threats, coercive conduct, intimidating acts and initiation of malicious criminal prosecutions were committed by the defendants in bad faith and as acts of gross misjudgment.

52. As a direct and proximate result of the acts of bad faith in gross misjudgment committed by each of the defendants both Timothy Jones and Janie Cole have suffered embarrassment, humiliation, emotional upset, mental anguish and aggravation, annoyance and inconvenience.

53. As a further direct and proximate result of the acts of bad faith and gross misjudgment committed by each of the defendants, Timothy Jones and Janie Cole have sustained economic loss associated with the removal of their son from Putnam County schools, the establishment of a residence in Kanawha County, West Virginia where their son is currently enrolled and for significant attorney fees and expenses associated with the defense of Timothy

Jones to the malicious criminal prosecution that formed a part of the defendants bad faith and gross misjudgment.

54. The conduct of each of the defendants, both individually and acting in conspiracy with each other, to retaliate, coerce, intimidate, threaten and maliciously prosecute Timothy Jones and persecute Janie Cole was done intentionally and in total disregard for the rights of Timothy Jones and Janie Cole secured by the anti-retaliatory provisions of the Americans With Disabilities Act of 1991 (42 U.S.C. §§ 12101 *et seq*.) (hereinafter referred to as "ADA") 42 U.S.C §12203, Section 504 of the Rehabilitation Act of 1973, currently codified at 29 U.S.C §794, 29 CFR § 33.13, the Civil Rights Act of 1964 and the West Virginia Human Rights Act, W. Va. Code §5-11-9(C) to the extent that an award of punitive damages should be rendered against them.

55. The conduct of the Board, Hudson and Hatfield in failing to make any reasonable inquiry regarding the malicious criminal prosecution initiated against Timothy Jones and to cause the same to be dismissed before Mr. Jones was subjected to four months of living under the fear and apprehension of being imprisoned, is a separate and distinct act of bad faith and gross misjudgment on the part of these defendants that is so reprehensible and shocking to the conscience that an additional award of punitive and exemplary damages under the provisions of the West Virginia Human Rights act should be rendered against them both jointly and severally.

WHEREFORE, Timothy R. Jones and Janie Cole respectfully request the following relief:

1. Compensatory damages in an amount that will reasonably compensate them for the injuries and damages they have sustained;

2. An award of exemplary or punitive damages, insofar as permitted by law, in an amount sufficient to punish and chastise the defendants for their acts of bad faith and gross

misjudgment and for the acts of the Board, Hudson and Hatfield for intentionally allowing the malicious prosecution of Timothy R. Jones to continue;

      3.      Attorney's fees, litigation expenses, and costs of this action; and

      4.      Both pre-judgment and post-judgment interest for any award made herein.

PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL ISSUES SO TRIABLE HEREIN.

TIMOTHY R. JONES AND JANIE COLE
BY COUNSEL

/s/    Harvey D. Peyton
HARVEY D. PEYTON, ESQUIRE
West Virginia State Bar No. 2890
PEYTON LAW FIRM, PLLC
2801 First Avenue, P.O. Box 216
Nitro, WV 25143
Telephone:   (304) 755-5556
Telefax:       (304) 755-1255
*Counsel for the Plaintiffs*